## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS CONCERT, | : | Civil No. 3:11-CV-2332 |
| | : | |
| Plaintiff, | : | (Judge Caputo) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| SWOYERSVILLE BOROUGH, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.     Statement of Facts and of the Case

This is one of two companion cases filed on December 16, 2011, by the plaintiff, Thomas Concert, who is acting *pro se*.   In this civil action, Concert names seven defendants–the Swoyersville Borough, the Swoyersville Borough Police Department, Chief of Police Thomas DiMaria, Officer Anthony J. Kowalcyzk, Corporal Adam Christiansonthe, and "the mayor and administrative personnel [and] representing solicitor." (Doc. 1)  Liberally construed the complaint then goes on to allege that, on September 18, 2009, Concert was walking down the street when police officers grabbed him, handcuffed him, and placed him in the back of the patrolmen's vehicle. (Id., ¶¶9, 14).  According to Concert, he was briefly detained in the vehicle until the officers "took him to his Front door of the home residence and ordered him to go into his house and remain in his home[.]" (Id., ¶14).

Concert contends that he later received a citation for disorderly conduct from Officer Kowalczyk, (Id., ¶16), a charge that was ultimately dismissed. Concert then articulates a civil rights claim involving an alleged violation of his Fourth Amendment rights arising out of an alleged malicious prosecution and false arrest. (Id., ¶¶1, 18, 30). In addition, Concert claims that the Swoyersville Borough, through its Chief of Police, failed to adequately train and supervise Defendant police officers. (Complaint, ¶19). Concert also alleges, in a conclusory fashion without any supporting well-pleaded facts, that the defendants engaged in a custom or policy of committing unlawful acts of intimidation and retaliation. (Id., ¶¶1, 19, 23).

The defendants have now moved to dismiss this complaint, alleging that it fails on multiple grounds to state a claim upon which relief may be granted. (Docs. 10 and 11)  Concert has responded to this motion, albeit in a fashion that is both opaque and difficult to discern, stating in part that:

> In the defendant's pulmonary objection scattershot arguments they challenge the existence of policy customer practice be questioning the next between the policy custom or practice questioning in the Nexus between the policy customer practice and constitutional violations.

(Doc. 13, p.5)

Yet, while the precise thrust of this response is often unclear, one theme is clear in this pleading:  Concert appears to recognize a need to improve and clarify his pleadings, and requests that he be given leave to amend his complaint. (Id.)

Because we believe that a number of the defendants' preliminary objections are well-taken, but also believe that Concert should be given leave to amend, we recommend that the Court grant this motion to dismiss, without prejudice to allowing the plaintiff to attempt to correct the deficiencies noted in this report and recommendation by filing an amended complaint.

## II.   **Discussion**

## A.   **Motion to Dismiss–Standard of Review**

The defendants' have moved to dismiss this complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth." Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. at 1949.  Rather, in conducting a review of the adequacy of complaint,

the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite factual

allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of

mere speculation.  As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. Second, a District Court must then
> determine whether the facts alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible claim for relief." In other words,
> a complaint must do more than allege the plaintiff's entitlement to relief.
> A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.   Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.   Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.   Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Applying these standards, we find that this complaint, in its present form, is subject to summary dismissal.

### B.    Concert's Complaint Should Be Dismissed Without Prejudice and the Plaintiff Should Be Afforded Leave to Amend This Pleading

At the outset, to the extent that Concert seeks to hold governmental agencies like the Swoyersville Borough or the Swoyersville Borough Police Department liable for alleged civil rights violations, he must meet an exacting burden of pleading and proof.  It is well-settled that local governmental entities may not be held liable under § 1983 for the acts of others under a theory of *respondeat superior* or vicarious liability.  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1948 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  Instead, such an agency may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Thus, to sustain a claim like the claim that Concert initially appeared to advance against these institutional defendants, a plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury."  Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997).  This custom must be "so widespread as to have

the force of law." Id. at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted).

The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404). A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'" Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'" Id. at 325 (citations omitted). Therefore, analysis of a claim under Monell requires separate analysis of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

An institutional defendant may also be liable for constitutional violations resulting from inadequate training or supervision of its employees if the failure to train amounts to a custom of the municipality. However, failure-to-train claims also must

-8-

meet precise and demanding legal criteria. Such a failure must "amount[] to deliberate indifference to the constitutional rights of persons with whom the police come in contact." Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Proving agency liability on a theory of deliberate indifference is an especially difficult showing for a plaintiff to satisfy where the plaintiff has alleged that insufficient training or supervision has caused constitutional violations. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). Such a showing requires that "(1) . . . lawmakers know that employees will confront a similar situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999). Moreover, the plaintiff proceeding on such a theory must establish that the agency's "deliberate conduct . . . was the 'moving force' behind the injury alleged." Reitz, 125 F.3d at 145 (quoting Brown, 520 U.S. at 404). Therefore, the need for training, supervision, or other corrective action to avoid imminent deprivations of a constitutional right "must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." Horton v. City of Harrisburg, No. 06-2338, 2009 U.S. Dist. LEXIS 63428, *13 (M.D. Pa. July 23, 2009) (quoting Strauss v. Walsh, No. Civ. A. 01-3625, 2002 U.S. Dist. LEXIS 24717, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002)). Additionally, in order to recover for municipal liability on a failure-to-train

theory, the alleged failure must be "closely related to the ultimate (constitutional) injury." Woloszyn, 396 F.3d at 325.

The Supreme Court has recently reaffirmed the guiding principles which define institutional civil rights liability based upon a failure to train or oversee law enforcement officers.   In Connick v. Thompson, – U.S.– , 131 S.Ct. 1350, 1359 (2011), the Court described the parameters of agency liability in the following terms:

> A municipality or other local government may be liable . . .if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." Pembaur v. Cincinnati, 475 U.S. 469, 479(1986) . . . . They are not vicariously liable under § 1983 for their employees' actions. . . . Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S., at 691. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. . . . . These are "action[s] for which the municipality is actually responsible." Pembaur, supra, at 479–480.   In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See Oklahoma City v. Tuttle, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." . . . . Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. . . . " '[D]eliberate

indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . . Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

Id. (some citations deleted).

Here, in its present form, Concert's complaint simply does not make sufficient allegations which would permit a finding of institutional liability against the Swoyersville Borough, or the Swoyersville Borough Police Department[1]. With respect to these municipal liability claims, in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

---

[1]In addition we note that the police department may not be a proper institutional defendant in this action since police departments serve only as an administrative arm of a municipality, and it is a municipality through which any liability must flow to the police department. A police department is not a "person" for purposes of §1983 and is not a proper defendant in a §1983 action. Golya v. Golya, 2007 U.S. Dist. LEXIS 58093, *29-30 (M.D. Pa. 2007) (explaining that courts within the Third Circuit have concluded that a police department is merely a sub-unit of the local government and is not amenable to suit under §1983); Wivell v. Liberty Township Police Dept., 2007 U.S. Dist. LEXIS 54306, *5-6 (M.D. Pa. 2007) (explaining that police department not subject to suit in a §1983 action).

Fairly construed, Concert's pleadings amount to little more than a formulaic recitation of the elements of a cause of action, a form of pleading that will not do.  Neither has Concert alleged facts that would permit a finding of institutional liability on a failure-to-train theory since he has not alleged well-pleaded facts which would permit an inference that the agency's failure to train "amount[ed] to deliberate indifference to the constitutional rights of persons with whom the [police] c[a]me in contact." Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Therefore, Concert's claims against this institutional defendant fail as a matter of law.

In addition, Concert's's complaint also names various supervisory officials, including the police chief, mayor, administrative personnel, and representing solicitor defendants, but is largely bereft of any factual allegations regarding direct misconduct by these defendants.  This, too, is a fatal flaw in this pleading since it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was government supervisory official, when the incidents set forth in the complaint occurred.  Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution.  Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual

knowledge and acquiescence in the challenged practice. <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to government supervisory officials it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988).

<u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . <u>See</u> <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); <u>see also</u> <u>Dunlop v. Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); <u>Robertson v. Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

<u>Ashcroft v. Iqbal</u>,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W.D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F.Appx. 178, 181 (3d Cir. 2006).

Here, Concert does not allege that these supervisory officials directed the conduct of Swoyersville police officers on September 18, 2009, or had knowledge of that conduct and acquiesced in it.  Rather, Concert does little more than list these officials in the complaint, without setting forth any factual basis for a claim against him in the body of this pleading, a style of pleading which is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants. Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.)

Finally, we note that the defendants' motion to dismiss raises substantial question regarding the application of the statute of limitations to this case.  Concert acknowledges these concerns in his response, but seeks to address them through the

filing of an amended complaint. (Doc. 13)  We believe that Concert should be given this opportunity to amend what he acknowledges to be a flawed pleading.  In sum, in its current form this complaint fails to state a claim against many of these defendants upon which relief may be granted.  While this initial merits analysis calls for dismissal of this action in its current form, we recommend that the plaintiff be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint.  We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiffs to comply with the rules governing civil actions in federal court.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the motion to dismiss be GRANTED and the plaintiff's complaint be dismissed without

Case 3:11-cv-02332-MEM   Document 14   Filed 03/06/12   Page 16 of 16

prejudice to the plaintiff endeavoring to correct the defects cited in this report,

provided that the plaintiff acts within 20 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in 28
U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition
of a prisoner case or a habeas corpus petition within fourteen (14) days
after being served with a copy thereof. Such party shall file with the clerk
of court, and serve on the magistrate judge and all parties, written
objections which shall specifically identify the portions of the proposed
findings, recommendations or report to which objection is made and the
basis for such objections. The briefing requirements set forth in Local
Rule 72.2 shall apply. A judge shall make a de novo determination of
those portions of the report or specified proposed findings or
recommendations to which objection is made and may accept, reject, or
modify, in whole or in part, the findings or recommendations made by the
magistrate judge. The judge, however, need conduct a new hearing only
in his or her discretion or where required by law, and may consider the
record developed before the magistrate judge, making his or her own
determination on the basis of that record. The judge may also receive
further evidence, recall witnesses or recommit the matter to the
magistrate judge with instructions.

Submitted this 6th day of March 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

-16-